.sought to be recovered back, nor was more paid than was due. The only difficulty with the payments is that they were called by a wrong name; they were called interest, when they were in .part principal. The money paid, no matter by whom furnished, was accepted as payment, and operated as such *pro tanto*.

But Reid and Dickinson were purchasers of the equity of re-·demption, and as such had a right to pay and redeem. *Tichenor* ·v. *Dodd, 3 Gr. Ch. 454; Bolles* v. *Wade, Id. 458.*

V. The complainant in the foreclosure proceeding prayed for ·a decree of deficiency, and a decree was made accordingly.

The ascertainment of the amount due was an indispensable step in such a proceeding and concluded all.

PER CURIAM.

This decree affirmed, for the reasons given by the Advisory Master.

*For affirmance*—THE CHIEF-JUSTICE, REED, SCUDDER, BROWN, CLEMENT, COLE, McGREGOR—7.

*For reversal*—DEPUE, DIXON, GARRISON, KNAPP, MAGIE, PATERSON, WHITAKER—7.

---

JOEL CLEMENTS et al., appellants,

*v.*

JOHN HORN, respondent.

A husband, entitled *jure mariti* to the proceeds of sale of certain lands which ·descended to his wife before 1852 (when the married woman's act was passed), executed a deed of trust, directing the trustee to invest the fund on bond and mortgage, and giving to her the income thereof for life, with a testamentary power of disposing of the principal and its accumulations. After her husband's .death she made a will, giving the fund to a subsequent husband. At her re-

quest the trustee, who had previously invested the fund according to the trust deed, bought a house and lot, using the fund to pay therefor, and taking the title in her name, but without any mention of the trust in the deed, and she and her husband occupied the premises until her death.—*Held*, that the will was not revoked by the diversion of the trust fund, nor the fund itself destroyed or lost beyond identification, and that the husband is entitled to have the amount of the fund decreed to be a first lien on the house and lot.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

This suit was instituted for the purpose of procuring a decree, declaring that certain moneys invested in a house and lot were trust funds; and that the complainant had a lien on said house and lot by virtue of the facts which are in the case, as stated in the bill and admitted in the answer, or clearly established by proof. To come to a right understanding of the question in controversy, it is desirable to state the facts, together with the period of time when they arose. The complainant, John Horn, is the second husband of Mary Ann, a daughter of Merritt Horner. Merritt Horner died in 1843, seized of certain lands which descended to his heirs-at-law, Mary Ann being one of them; she was then the wife of John Grevirson. Afterwards proceedings were taken and a division of the said lands duly effected between the tenants in common, a portion thereof being assigned to the said Mary Ann. Mary Ann and her husband joined in selling her portion to her brother, Marlin Horner, for the sum of $1,925. It is admitted that, as the law then stood, the money which was received for the sale of said land became the property of her husband, and that he had the right to dispose of it at his pleasure, and that he did make disposition of it, or attempted to, by an instrument in writing, in and by which he recited the manner in which he became possessed of it, and also his desire to secure it for the benefit of his said wife, and appointed William Horner, brother of his said wife, to receive the said money from Marlin Horner, who had purchased the land, and ordered him to invest the same in his, the said William Horner's, own name, on lands secured by mortgage in this State, and to keep the same invested

for the sole and separate use of said wife during her natural life, and from time to time, as the same might be received, to pay over the interest and proceeds thereof for her sole and separate use, without any interference by him, the said John Grevirson, or by any future husband which she might have, her receipt, whether as *feme covert* or *feme sole*, to be full and sufficient acquittance thereof; and declaring, in and by the said writing, that it should be lawful for her, at any time during her life, whether married or single, by her last will and testament, or by a writing in the nature of a last will and testament, signed by her, in the presence of two witnesses, to designate and appoint any person or persons, to have, receive and acknowledge the said purchase-money absolutely after her death ; and in case of her failure to make any such designation or appointment, then the said purchase-money, and any interest thereon in arrears, should go and be distributed to her next of kin, in such shares and proportions as they would be entitled to have and receive in personal property of which she might die lawfully possessed in her own right and estate ; and that thereupon the said William Horner, his executors, administrators or assigns, should pay over all said purchase-money, and any arrears of interest unpaid at the decease of said wife, to such persons as she might so designate or appoint, or in default of such designation or appointment, then to the next of kin, as aforesaid ; and also declaring, in and by the said instrument, that his true meaning was that the said William Horner might, instead of receiving from the said Marlin Horner the said purchase-money, secure all or any portion thereof by his bond and mortgage ; and also declaring that, in case of payment of all or any of the moneys so invested, the said William Horner, his executors, administrators or assigns, should from time to time, as often as it became necessary, re-invest the same, or any part thereof, upon bond and mortgage, as aforesaid, and hold the same in trust as thereinbefore stated.

This trust the said William Horner accepted by a declaration, in writing, acknowledging receipt of the sum of $1,225 secured by bond and mortgage, and the balance in cash. The said declaration of trust bears date the 19th day of March, 1846. On

the 27th day of November, 1847, John Grevirson departed this
life, leaving his said wife, Mary Ann, surviving. On the 28th
day of August following, the complainant intermarried with the
said Mary Ann, and on the 12th day of April, 1851, the said
Mary Ann made and published her last will and testament, in-
tending thereby to comply with the powers and requirements of
the declaration of trust made by her former husband. In and
by said will, she refers to and recites the said declaration of trust
and the appointment of said William Horner as trustee, and the
powers committed to him. After which she declared and pro-
vided, in substance, that in pursuance of the rights and privileges
conferred on her by the said declaration of trust, and from a
desire to dispose of the moneys therein mentioned according to
her mind and wishes, she made and constituted the said writing,
and declared the same to be her last will and testament, in and
by which she gave and bequeathed to her husband, John Horn,
all the said moneys then in the hands, or under the control, of
her brother William, trustee as aforesaid, or in the hands or con-
trol of his legal representatives in case of his death, amounting
in all, as she therein declared, to the sum of $1,925 of principal,
and all interest due, or to become due, after her decease ; further.
declaring that all of said moneys was to vest in and become abso-
lutely the property of her said husband immediately after her
death. She thereby appointed her husband the executor of her
said last will. On the 7th day of February, 1863, the said
trustee, William, it is alleged, with a view of further facilitating
the enjoyment of the said trust fund of the said Mary Ann, in-
vested the same funds in a house and lot of land in the city of
Camden, taking the title in the name of the said Mary Ann, he
taking nothing from her to indicate the trust or to secure the
payment of the purchase-money, in which form the said money
remained invested until some time in January, 1876, when the
said Mary Ann departed this life, after which her said last will
and testament was admitted to probate. The said Mary Ann
died in possession of the said house and premises, and from
thence until now her said husband, the present complainant, has
been in the undisturbed possession thereof. It is alleged in the

bill of complaint that his right to the possession has been questioned by the heirs-at-law of the said Mary Ann.

From these facts, the defendants seek to establish certain legal principles upon which they rest their case. They insist, in the first place, that John Grevirson had no further interest in the consideration money received for said lands after the said sale, until he had reduced them to actual possession (which he never did), and that his admitted disposition of them by the instrument resisted in the bill was invalid and of no effect, and that he did not thereby destroy her power or right of dealing with the fund after his death, according to her own wishes, and that all investments made by her, or at her request, or upon her directions, were valid and effectual independently of the said supposed declaration of trust. It is further insisted that the investment of the said funds in the house and lot, by her consent, or upon her directions, was a revocation of the testamentary disposition of the said fund, and, therefore, a destruction of any rights which had been secured to the complainant in and by the said last will and testament.

*First.* What ought the judgment of the court to be as to the legal effect of the action of John Grevirson and Mary Ann, his wife, upon the execution of the paper purporting to be a declaration of trust by him and the delivery of it to her, and her acceptance of it, it distinctly reciting the facts above enumerated, showing his claim of ownership of the said funds, her acquiescence in that ownership, and her acknowledgment of the validity of his claim by the execution of the power afterwards by her, in and by which she gave the said funds to the present complainant? It appears that the title to this land was in her. The land was afterwards sold, and before the money had been paid the declaration of trust was made, and, it must be presumed, with her consent, for she accepted it and afterwards recognized it by attempting, at least, to comply with all its provisions or requirements. If the husband, John Grevirson, had not actually reduced those moneys into possession, it is conceded that he had a right to do so. I think it must also be conceded that both parties intended to treat them the same as though they had

actually been reduced to such possession by the husband. There seems, therefore, to be no necessity for holding that the husband did not acquire a legal right, because the formality of passing the money over to him was not performed, when both he and his wife regarded it as actually done. There are a multitude of cases illustrating the familiar doctrine that courts of equity will regard as accomplished or performed that which the parties intended should be performed, when that intention has once been made known and acted upon. That just and salutary rule, I think, may safely be applied to the case in hand. I conclude, therefore, that the declaration of trust, the acceptance of it by Mary Ann, and the execution, by her, of the power therein conferred upon her, were legitimate and binding upon all parties interested.

*Second.* Was the investment of the funds in the house and lot in the name of Mary Ann a revocation of the testamentary gift? I cannot understand how, upon principle, it can have any such effect. There is nothing to show that such was her intention, either directly or indirectly. The taking the title to a tract of land in her name, the consideration of which was these trust funds, was no more an act revoking her last will than the taking of a mortgage in her name securing those funds. In either event there would be no difficulty in tracing the funds. In either event the act would be the act of the trustee, her brother, William Horner, and not her act. The performance of it might be with or without her consent. Her consent was not, and could not be, essential, so long as the act was the act of one authorized to perform it. The performance of the act, the execution of the deed in this case, or of a mortgage in the case supposed, might be irregular or a departure from the power under which the trustee is authorized to act; but the irregularity of an act, or the departure from the strict line of duty by the standard of the instrument creating the trust, certainly cannot be urged as a destruction of the trust itself. Nor is the investment a revocation of any power which has been duly executed according to such declaration of trust. It seems to me that it would be a very dangerous doctrine to hold that a donee, after the exercise of a power conferred, destroys the operation and effect of the

Clements *v.* Horn.

instrument by which the power is exercised, simply because a consent is given to some use or disposition of the funds, which is the object of the power, in a manner not precisely contemplated by the original declaration of trust which gives the power. In this case the only departure or irregularity was in investing the moneys by taking an absolute title in fee for the land, rather than a mortgage; the money, nevertheless, being secured, its identity placed beyond dispute, and the object in nowise indeterminate. I can find nothing in the case to signify the slightest intention on the part of Mary Ann to revoke her last will. It was allowed to go to probate, and so far as appears, without any resistance by her heirs-at-law or next of kin. So there does not appear to have been either a revocation or an attempted revocation. And, therefore, the statute (*Rev. 1248 § 23*), which requires that all written revocations of wills shall be executed in the same manner that wills are required to be executed, has not been complied with, nor the general rule of evidence, that the proof to overcome the force of an existing will, or a paper writing purporting to be a will, must be of the same character and force, both as to the credibility and the number of the witnesses, as is essential to establish a will. *Boylan* ads. *Meeker, 4 Dutch. 274, 285; Mundy* v. *Mundy, 2 McCart. 290.*

Where, then, is the fund given by the will? Can it be traced? It is admitted that the trustee invested it in the house and lot named in the bill. Is the legatee deprived of it because the trustee was recreant? Is it only necessary for a trustee to divert the funds in his hands or to invest them in the name of another, in order to deprive a legatee, or donee, of his just rights? Hitherto, courts of equity have not allowed such considerations to prevail. If the trustee had kept these moneys in his own pocket, or had invested them in his own name on bond and mortgage, or in the purchase of real estate, he could be compelled to account for them, or the mortgage could be laid hold of in the one case, the land itself in the other. Wrongdoing can never so shorten the arm of the court that it cannot save such funds. And taking title in the name of another, even

Clements *v.* Horn.

the donee of the power, cannot overcome the equity, after the donee has exercised the power.

Counsel for the defendants interposed the doctrine of laches, saying that the complainant had slept on his rights for twenty-three years.  Not twenty-three, for the testatrix did not die until in 1876, about twenty-five years after she made her will, and about thirteen after the purchase of the house and lot.  This being so, and the husband and legatee being in possession of the lot and premises, and no question having been raised until recently, I am persuaded that it was not his duty to open this litigation sooner.  It is not shown that any one else has suffered, nor that he has gained any advantage.

I will advise a decree making the entire fund, together with the costs of this suit, a lien on the house and lot in question, and that a sale be made to raise the amount due, together with the costs of execution, unless the defendants, or some of them, pay the same within thirty days from the time of the service of this decree on their solicitor.  No costs will be allowed against the defendants personally.

*Messrs. Garrison & French,* for appellants.

*Mr. John W. Wartman* and *Mr. J. J. Crandall,* for respondent.

Per Curiam.

This decree unanimously affirmed, for the reasons given by the Vice-Chancellor.