This is an appeal from a decree of the Orphans Court probating the will of Charles Edgar Lawrence, who died February 4th, 1945. In May, 1936, decedent executed the will in question, in duplicate, taking one copy with him and leaving the other with the counsel who drew it. The original, in the possession of decedent, has disappeared; the duplicate was produced and used to probate the original as a lost will. Before the institution of the proceedings to probate the will, letters of administration had been issued to a nephew of decedent, which were revoked on the probate.
The presumption is that when a will was in the possession of a testator, as here, the fact that it cannot be found upon his death shows he destroyed it, animo revocandi. This presumption is rebuttable. Campbell v. Smullen, 96 N.J. Eq. 724; Croake
v. Summit Trust Co., 119 N.J. Eq. 356; In re Calef, 109 N.J. Eq. 181; Holcombe v. Holcombe, 39 N.J. Eq. 592. The proof necessary to rebut the presumption that it was destroyed animorevocandi must be sufficient to exclude *Page 135 
any possibility of destruction by the testator himself. In reBryan, 125 N.J. Eq. 471; In re Casey, 127 N.J. Eq. 101; In reCalef, supra. The fact that the will was executed in duplicate does not affect the rule. This was expressly held in In reBates, 134 Atl. Rep. 513. Here the court says: "The duplicate occupies no higher position than an unexecuted copy and is merely evidence of the original's contents. The revocation of the latter by testator is a revocation of the duplicate, regardless of where kept or found."
Respondents, the proponents of the will, contend they have fully met the presumption of destruction by the facts and circumstances shown. These disclose an unusual situation. For many years prior to his death, and in fact to the execution of the will, decedent lived in the same house with a brother, William Lawrence. They had nothing to do with one another and were not on speaking terms. They each lived in a separate part of the house. He asked the draftsman of the will to make it in duplicate, and to keep a copy for he feared that his brother might destroy his will if he found it. The original he took with him and placed in a strong box at his home. He showed it to two nieces, the beneficiaries of the will, and put it in the strong box. On his death it was not found there, nor has a search disclosed its whereabouts. His brother William, who was ill, and who died a short time thereafter, asked the nephew to apply for administration. A later investigation by the nieces, discovered the duplicate in the hands of the lawyer, and the present proceedings were begun. Following the death of decedent, it is possible that the brother, the administrator, or some one else interested in destroying the will, did so, since they had an opportunity to obtain access to the strong box. Respondents intimate that it is a fair inference that one of them did so.
But such an inference is wholly unwarranted, and there is no evidence whatever to support it. Nor is there any evidence that the will was in existence and in the possession of decedent immediately prior to his death, as was the case in In reSchnebel, 141 Atl. Rep. 313, where testatrix spoke of her will the day before her death. Here the decedent may well have destroyed his will because he was not satisfied with its contents *Page 136 
and yet have decided to conceal the knowledge of that fact to avoid importunity, as was pointed out in Deave's Appeal,21 Atl. Rep. 395. There is in fact some slight evidence to support the possible inference that the will had been destroyed by decedent himself. When he left his home shortly before his death to go to a hospital for an operation, he took with him some insurance policies and money apparently removed from the strong box. It is probable or at least possible that he would have taken the will if it was then in existence. At any rate, there is no proof whatever that the will was existing and in decedent's possession immediately prior to his death. Accordingly, the proponents have failed to rebut the presumption of revocation by destruction.
Nor would the execution of the duplicate will, and the declarations of decedent of fears of his brother, and of intention to notify the lawyer of any change of intention be effective to promote the duplicate from its status of being merely a conclusively proven copy to that of an irrevocable will. The fact is that in spite of the request of the lawyer that the original be left for safekeeping with the lawyer, decedent insisted on taking it with him, and retaining possession. This made it possible for him to revoke it without notice to any one, and the presumption, not rebutted, is that he did so.
The decree of the Orphans Court must be reversed, and the will propounded denied probate. *Page 137