John A.D'Agostino died July 21, 1948. He left a will dated March 9, 1928, which the principal beneficiaries offer for probate in this proceeding. The objection against probate of the instrument filed by his widow, Jeanette, is as follows:
"Said paper writing was prepared and drawn in two exact copies both of which were executed by said decedent as his last will and testament in the manner and form required by law. One of said copies was delivered to and retained by Guarantee Trust Company, the executor designated therein, and the other of said copies was kept and retained in the possession of the said testator. On or about April 19th, 1942, said Jeanette D'Agostino and said decedent were married. A short time after said marriage said decedent destroyed the copy of said will which had been retained by him as aforesaid and then in his possession, animorevocandi, and by that act all existing copies of said paper writing were revoked;".
At the hearing the due execution of the original will was proved and admitted as well, and respondent limited her attack upon probate to revocation as set out in the foregoing objection. Thus the basic issue is specific and clearly defined to be whether the will of John A. D'Agostino was executed in duplicate, or exact copies, and if so, did decedent destroy animorevocandi the copy he retained.
With the due execution of the original will established, the burden shifted to respondent to prove that the will was executed in duplicate and that the duplicate retained by testator was destroyed animo revocandi. If this proof convincingly establishes the due execution of the will in duplicate and revocation by testator's destruction of the executed copy retained by him, then the will offered is effectively revoked regardless of where it was kept or found. Cf. In re Lawrence,138 N.J. Eq. 134 (Prerog. 1946).
The pertinent provision of our statute on the method of revocation of wills, R.S. 3:2-4, is:
"No written will or any devise or bequest therein, or any clause thereof, may be revoked except by: A. Burning, cancelling, tearing *Page 552 
or obliterating the same by the testator himself or in his presence by his direction and consent; or * * *."
Compliance with the provisions of this statute is essential for effective revocation. Heise v. Earle, 134 N.J. Eq. 393 (E. A. 1944).
The witnesses to the will were Raymond R. Read and Carolyn A. Wright. Mr. Read did not survive the testator. Carolyn A. Wright Olson (nee Wright) testified to the execution of the will. She identified her signature to the attestation clause, and also Mr. Read's, and testified that the instrument was executed in accordance with the terms of the attestation clause. She further testified that Mr. Read was trust officer of Guarantee Trust Company (now defunct), the executor named in the will; and that she was employed by that bank and its successor, Guarantee Bank and Trust Company, from 1923 to 1945 in the trust departments as secretary to Vice-President Sypherd. She knew who Mr. D'Agostino was, but she did not remember the will transaction at all, nor was her memory of it refreshed in any respect by counsel's most searching examinations. The witness had no recollection that this will was executed in duplicate, nor that she had ever attended upon execution of any will in duplicate. It appeared that she had typed many wills in the trust department and attended upon the execution of several hundred. Neither the body of the will, nor the attestation clause contain any reference to its execution in duplicate, and no presumption thereof arises.
Mrs. Olson's testimony is the sole evidence directly bearing upon the execution of the will. It clearly fails to establish that the will was executed in duplicate and that testator retained an executed duplicate when he left the original with the bank.
But it is contended that evidence aliunde establishes execution of such a duplicate copy and its retention by testator until he destroyed it on March 7, 1943, with the declaration that he was revoking his will and ending his provision therein for his family. *Page 553 
As to the copy of the will and its actual destruction the testimony is limited to that of the widow and of Mrs. MacCrowe, the latter a friend of the widow and of testator's. The following is a summary of the evidence upon that subject. It appears that shortly after John D'Agostino's marriage in April, 1942, he became involved in a very substantial suit instituted by his mother for recovery of a one-half interest in his winery business. Soon thereafter the testator and his wife returned from a "second" honeymoon trip to California, and their friends, Dr. and Mrs. MacCrowe visited at the D'Agostino apartment in Egg Harbor on Sunday afternoon, March 7, 1943. After some time spent in contemporary conversation John D'Agostino mentioned how disturbed he was about his mother's suit against him, and his belief that she had been influenced by his brothers and sisters. He complained that he didn't deserve such treatment in return for his generosity to all of his family and particularly the ones persuading his mother to ruin him. After absenting himself for a few minutes testator returned to the living room where his guests and his wife were sitting and handed Mrs. MacCrowe a paper saying it was his will and that it would show what he'd done for his family many years before in 1928. After remaining a few minutes he left the room again, and Mrs. MacCrowe, Mrs. D'Agostino and Dr. MacCrowe spent about one-half hour reading and discussing the instrument. From her prior experience as a typist, Mrs. D'Agostino recognized the typewritten portion of the document to be a carbon copy. Mrs. MacCrowe and Mrs. D'Agostino noted the specific provisions for different members of John's family, the fact the paper contained about five typewritten pages, was backed with blue paper, was dated March 9, 1928, the day spelled out and written in, contained misspelling of the first name of John's mother and sister Marea instead of Maria, and a misspelling of the surname of a friend Scarfidi instead of Scaffidi, the fact that it was signed by John whose signature was known, in fact, to each of them, and was followed by the word "seal" in a scroll. These witnesses also noted the form of the attestation clause and that beneath it were the names *Page 554 
of Raymond Read and Carolyn Wright written out with addresses following each; that the handwriting was distinctive, with Mr. Read's run together containing a middle initial and Miss Wright's definitely backhand with a middle initial and the first name spelled as Carolyn. Mrs. MacCrowe remembers the witnesses' names because it struck her as unusual at the time that they were Read and Wright. They remember that the Guarantee Trust Company was named executor, that its name was also on the blue backer with the word "copy" at the top, and that John's name was typed in on the backer and the date also, except for the day in written figure. After about one-half to three-quarters of an hour John returned to the living room of the apartment and there were a few more words about the will and his family, such as his stating that the witnesses to the will were from the bank, and Dr. and Mrs. MacCrowe saying he had certainly taken care of his family. Thereupon Mrs. MacCrowe handed the paper to John who tore it into pieces which he threw into a waste basket stating that that was the end of the will and that he was through with his family. The MacCrowes visited with the D'Agostinos for about two hours longer, had a light supper and left at the end of the afternoon.
Mrs. D'Agostino and Mrs. MacCrowe testified they never saw the will again, and Mrs. D'Agostino said John never spoke of it afterward. There is a mass of testimony pro and con bearing upon the relationship prevailing between John and the members of his family named in the will during the period covered by the litigation begun in 1943 and following the settlement in 1945 down to his death in July, 1948. Some of it bears upon his representing that his 1928 will was still in effect, and some confirms the destruction of it in March, 1943. Mrs. D'Agostino says that she saw the instrument offered for probate for the first time in July or August, 1948, at the Guarantee Bank and Trust Company, when Mr. Sypherd, the trust officer, showed it to her and that she remarked then it was the same as John had destroyed in 1943; and that thereafter she hadn't seen it until she testified in September, 1949. Without hesitation each of these witnesess *Page 555 
states that the instrument John destroyed in March, 1943, in their presence, was an exact copy of the will proved herein and contained his signature and the same witnesses' names in handwriting with the same characteristics. These witnesses admit having no knowledge of the form of wills beyond Mrs. MacCrowe's having a will of her own and having seen two others of members of her family. Neither Mrs. D'Agostino nor Mrs. MacCrowe had any experience in handwriting, nor had either made a study of it. Neither witness was qualified as an expert, nor did either of them have any acquaintance with the testamentary witnesses, Raymond R. Read and Carolyn A. Wright, or their signatures.
It is urged that the uncontradicted testimony of Mrs. D'Agostino and Mrs. MacCrowe adequately establishes that the copy of the will destroyed by John D'Agostino on March 7, 1943, was a duplicate of the duly proved original before the court for probate and that its destruction, under the circumstances, constitutes a valid revocation of the will. I do not perceive the evidence has such force. If full credence is given to the witnesses' remarkable relation of events occurring as far back as March, 1943, they have proved only that the paper then destroyed was a copy of the instrument now offered for probate — not an executed duplicate thereof. Their testimony as to the genuineness of the signatures of the testamentary witnesses, Read and Wright, was not competent because they had no actual knowledge of either signature, nor any special skill or training in the comparison of handwriting. State v. Goldstein, 72 N.J.L. 336 (Sup. Ct.
1906); affirmed, 74 N.J.L. 598 (E. A. 1907); Wheeler Wilson v. Buckhout, 60 N.J.L. 102 (Sup. Ct. 1897); In reGordon's Will, 50 N.J. Eq. 397 (Prerog. 1892); affirmed,52 N.J. Eq. 317 (E. A. 1894); In re Burbank's Will,93 N.Y.S. 866 (1905); affirmed, 185 N.Y. 559 (1906).
The point argued that the testimony is admissible under R.S.
2:98-1, permitting proof of handwriting by comparison in court, is without merit because the prescribed comparison was not made. Indeed, the signatures which would form the basis of inquiry here are beyond the possibility of comparison *Page 556 
in accordance with the statute, inasmuch as they were destroyed more than six years ago.
Thus it is clear that the evidence does not establish that the copy of the will testator destroyed was an executed duplicate copy of that submitted for probate, and this deficiency resolves the issue against revocation. However, assuming the competence of the proposed proof of execution of the will in duplicate, I seriously question its adequacy. It seems to me that proof of such execution aliunde requires evidence contemporaneous with the event.
Judgment may be entered admitting the will to probate and dismissing the objection. *Page 557