9 N.J. Super. 230 (1950)
75 A.2d 913
IN THE MATTER OF THE PROBATE OF THE WILL OF JOHN A. D'AGOSTINO, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1950.
Decided October 11, 1950.
*232 Before Judges JACOBS, BIGELOW and JAYNE.
Mr. Wm. Elmer Brown, Jr., argued the cause for the appellant (Mr. Edward I. Feinberg, attorney).
Mr. James N. Butler argued the cause for the respondents (Messrs. Moore, Butler & McGee, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
Judgment was entered in the Chancery Division admitting to probate the will of the decedent John A. D'Agostino dated March 9, 1928, and the caveatrix, his widow Mrs. Jeanette D'Agostino, appeals therefrom. Her appeal rests upon the contention that when the will was executed a duplicate was also executed and that on March 7, 1943, this duplicate was destroyed by the decedent with the intention of revoking his will.
The pertinent legal principles are fairly clear and are not in substantial dispute. Thus the parties acknowledge that once a will is properly executed it may not be revoked except in the manner provided by statute and the burden of establishing the revocation is on the person asserting it. See Clapp, Wills and Administration (1950), §§ 49, 55. The testator's destruction of his will, animo revocandi, constitutes a revocation within the terms of R.S. 3:2-4 and courts have recognized that such revocation is effectual where the instrument destroyed was an executed duplicate. See In re Holmberg's *233 Estate, 400 Ill. 366, 81 N.E.2d 188 (1948); 1 Page, Wills (3rd ed. 1941), § 437. Cf. In re Lawrence, 138 N.J. Eq. 134 (Prerog. 1946). However, destruction of an unexecuted or conformed copy does not meet the requirements of the statute and is therefore ineffectual as an act of revocation regardless of the testator's intent. See In re Wehr's Will, 247 Wis. 98, 18 N.W.2d 709 (1945), where the court stated "that to hold that a mutilation of a conformed copy was a revocation would be to interpolate or add to the statute what plainly is not there or to establish a symbolic revocation by judicial decree in the face of a statute which plainly does not mean to recognize it."
In the light of the foregoing the crucial issue before us and the only question we find it necessary to decide is whether the appellant has satisfactorily carried the burden of establishing that there had been, in fact, a duplicate will which was allegedly destroyed by the decedent on March 7, 1943. The original will dated March 9, 1928, was prepared and executed at the Guarantee Trust Company, Atlantic City, and remained there, or at the Guarantee Bank and Trust Company which assumed its business in 1938, until produced for probate. It consisted of six pages and was witnessed by Raymond P. Read, 100 Guarantee Trust Building, Atlantic City, New Jersey, and Carolyn A. Wright, 28 North Portland Avenue, Ventnor, New Jersey. Mr. Read was trust officer and Miss Wright was secretary to Mr. Sypherd, vice-president of the Trust Company. Mr. Read died in 1940 or 1941. Miss Wright, now Mrs. Olson, continued in the employ of the Trust Company until 1945. She has no present recollection of the D'Agostino will. She testified, however, that she had participated in the execution of a few hundred wills at the Trust Company; the practice was to retain the original wills at the Trust Company and give carbon copies to the testators; to the best of her recollection she had never executed any will in duplicate; and she believed no duplicate of the D'Agostino will was executed because "if it were otherwise, it would be so outstanding I certainly would remember it." There was *234 no other pertinent testimony by any person who participated in the execution of the D'Agostino will but the appellant relies on the following narration by herself and her friend Mrs. Hazel MacCrowe to establish that the will possessed and allegedly destroyed by the decedent was in fact a duplicate.
The appellant testified that on March 7, 1943, she and the decedent were at their home in the company of Dr. and Mrs. MacCrowe. The decedent had been discussing pending litigation by his mother against him and left the room returning shortly with a carbon copy of a will which he asked the others to read for the purpose of displaying how well he had dealt with his family. They read the will through at length and after they had finished the appellant handed it to the decedent who tore it up and threw the pieces into the wastebasket with the comment, "This is the end of the will and this is the end of my family." The decedent died on July 21, 1948, and the trial below commenced on September 19, 1949. At the trial the appellant stated that after the incident of March 7, 1943, she did not see the will until Mr. Sypherd showed her the original some time after July 27, 1948, and that she next saw it at the trial. Nonetheless, she testified in detail as to the identity of the original and the destroyed document, not only as to contents, but also as to the attesting clause and the signatures thereunder. She stated that she recalled that the date on the destroyed will was March 9, 1928, and appeared to be in the handwriting of the attesting witness Carolyn Wright; that Carolyn Wright's name was written in backhand and Raymond Read's first and last names were connected; and that there were lines under the names of the attesting witnesses.
Mrs. MacCrowe testified that she did not see the original will until the trial. Nonetheless, she likewise testified in detail as to the identity of the original and the destroyed document not only as to contents but also as to the attesting clause and signatures thereunder. She stated that Carolyn Wright's name was in a decided backhand and that the "Rs" in Mr. Read's name were distinctive because they were practically *235 triangles. She further stated that she recalled that there were middle initials and that Mr. Read's middle initial was either P or R and that Miss Wright's middle initial was either O or A. Although the appellant and Mrs. MacCrowe had no handwriting training and had no general familiarity with the signatures of Mr. Read and Miss Wright which they had never seen except on the distant occasions mentioned, theirs was the only testimony offered to establish that the signatures on the original will and the destroyed document were written by the same persons.
The opinion of the lower court (In re D'Agostino, 6 N.J. Super. 549, 555 (Ch. Div. 1949)) discloses its doubts as to the credence to be given to what it described as "the witnesses' remarkable relation of events occurring as far back as March, 1943." Assuming, for present purposes, the admissibility of all of the testimony presented on the appellant's behalf, we likewise have difficulty in accepting it as establishing that the destroyed document was a duplicate rather than a conformed or unexecuted copy. When the will was read in 1943 there was no occasion whatever for any detailed study or more than cursory observation of the attesting signatures. Even if the signatures were examined more closely than is probable on that single occasion it may be doubted that the wholly untrained powers of observation of the appellant and Mrs. MacCrowe would be sufficient to support, with any reasonable assurance of accuracy, any conclusion that they were written by the same hands as were those on the original will which they observed for the first time many years thereafter.
The public policy of our State as expressed in legislative enactments is that wills shall not become effective unless executed in compliance with prescribed requirements and that when properly executed they shall not be revoked except upon compliance with similarly prescribed requirements. Boylan ads. Meeker, 28 N.J.L. 274, 285 (Sup. Ct. 1860); Clements v. Horn, 44 N.J. Eq. 595, 601 (E. & A. 1888). Full recognition of this policy requires that where, as here, the caveatrix *236 asserts that the original will in the possession of the Trust Company executor was revoked by the testator's destruction of a duplicate she must establish that fact by convincing proof. Cf. Heise v. Earle, 134 N.J. Eq. 393 (E. & A. 1944); In re Calef, 109 N.J. Eq. 181 (Prerog. 1931); affirmed, 111 N.J. Eq. 355 (E. & A. 1932); cert. denied sub nom., Neely v. Stacy, 288 U.S. 606, 77 L.Ed. 981 (1933). In the instant matter we are not persuaded that the tendered proof meets this test; on the contrary, we incline to the view that, from all of the circumstances and the testimony, including Miss Wright's (cf. Wigmore, Evidence (3rd ed. 1940), § 92), the reasonable inference is that such destruction as may have occurred on March 7, 1943, was of a conformed or unexecuted copy rather than a duplicate. Under this view the present appeal must fail. See In re Wehr's Will, supra.
The judgment of the Chancery Division is affirmed.