IN THE MATTER OF THE PROBATE OF THE ALLEGED
WILL OF PATRICIA J. SCHNEIDER, DECEASED.

Middlesex County Surrogate's Court
Probate Division

April 28, 1978.

*Mr. Bernard Warren Hehl* for proponent of the will (*Messrs. Romano, Hehl, Romankow & Wilde, P.A.*, attorneys; *Mr. Bernard Warren Hehl*, on the brief).

*Mr. Morton S. Bunis* for the caveator (*Messrs. Sills, Beck, Cummis, Radin & Tischman*, attorneys).

*Mr. Joseph A. Deckhut* for Kevin Schneider (*Mr. Aldan O. Markson*, attorney).

LONGHI, J. C. C. In 1962 decedent Patricia Schneider, while a resident of New Jersey, executed a will leaving all of her estate to her husband Norman Schneider, remainder to their children. Two children were born of the marriage, a daughter now deceased and a son, Kevin Schneider, now age 20. In 1970 Patricia and Norman Schneider were divorced in New Jersey. The divorce judgment itself makes no provision for equitable distribution. However, it is uncontroverted that the parties did in fact make an equal distribution of all of their assets. Subsequent to the divorce decedent married Jerome Leviten and was married to him at the time of her death in March 1975.

Upon her death Jerome Leviten applied for and was granted letters of administration upon his allegation that decedent died intestate. Thereafter Norman Schneider produced and offered for probate the will that decedent had

executed in 1962. Jerome Leviten filed a caveat asserting that Patricia Schneider's divorce from Norman, coupled with a property settlement and her subsequent remarriage, operated to revoke her 1962 will by implication. Norman Schneider has assigned his rights under the will to Kevin Schneider, the sole surviving issue of the marriage between him and Patricia Schneider.

The sole issue to be decided is whether divorce of a testatrix, accompanied by a property settlement and subsequent remarriage, revokes a will made eight years prior to the divorce which left testatrix' entire estate to her then husband.

The proofs at the trial clearly establish that the will was properly executed and that decedent never revoked the will or executed another will or codicil.

The caveator concedes that under the existing statute, *N. J. S. A.* 3A:3–3, and the case law that had developed thereunder prior to 1960, a divorce coupled with a property settlement did not revoke an otherwise validly executed will. He urges, however, that other jurisdictions recognize the revocation under such circumstances, either by statute or by judicial interpretation. He further asserts that more recent New Jersey cases appear to indicate that the rigidity of the rule against implied revocation of wills where there is a divorce and property settlement is diminishing, depending on the circumstances presented in an individual case. Further, he states that by the enactment of *L.* 1977, *c.* 412, effective July 1979, the New Jersey Legislature has evidenced an intent to incorporate into the law the current judicial view on the subject.

While it is true that some jurisdictions recognize that a will can be revoked by reason of a divorce, property settlement and subsequent change in circumstances — see *Page on Wills* (3 ed. 1960), § 21.101 at 523; 71 *A. L. R.* 3d 1297 (1976); § 2–508 — that is not the law in our State. *Murphy v. Markis,* 98 *N. J. Eq.* 153 (Ch. Div. 1925), aff'd 99 *N. J. Eq.* 888 (E. & A. 1925); *In re D'Agostino's Will,*

9 *N. J. Super.* 230 (App. Div. 1950) ; *In re Santelli,* 28 *N. J.* 331 (1958). Under present New Jersey law a testator, in order to revoke a will, must utilize one of the methods stated in *N. J. S. A.* 3A:3–3. The caveator urges that *Sheldon v. Sheldon,* 66 *N. J. Super.* 590 (Ch. Div. 1961), and *In re Garver,* 135 *N. J. Super.* 578 (Ch. Div. 1975), evidence a changing judicial view. However, those cases do not abrogate the rule that "a will * * * properly executed * * * may not be revoked except in the manner provided by statute and the burden of establishing the revocation is on the person asserting it." *In re D'Agostino's Will, supra,* 9 *N. J. Super.* at 232.

In *Sheldon* the testator, while married, executed a will which, among other provisions, left to his then wife one-half of the net proceeds from the sale of specified realty. The remaining half was left to a child. The parties were subsequently divorced and as part of that proceeding testator purchased the former spouse's interest in the realty and received back a quitclaim deed and also a general release of all claims against the husband and his heirs. The court did not set aside the will but revoked by implication the specific testamentary devise to the former spouse. The court reasoned that the actions taken by the parties in the divorce matter clearly evidenced an intent by them to cut off the wife's interest in the realty and that to permit that portion of the will to stand would have the result of giving her more than one-half of the realty, to the detriment of the surviving child. The case clearly turned on its specific factual pattern and has no application to the case at bar.

In *Garver* the court set aside a will that made a testamentary disposition of assets to a former spouse. In that case the marriage, execution of the will and subsequent divorce all took place in Tennessee. That state by statute provides for the revocation of a will making a disposition of property to a former spouse where there has been a subsequent divorce. The court, noting that all of decedents' assets were outside

of the State of New Jersey, applied Tennessee law and revoked the will. Thus, neither *Sheldon* nor *Garver* stand for the proposition that in New Jersey a will may be impliedly revoked by a subsequent divorce.

The law in this State remains that a valid will may be revoked only in accordance with statutory criteria. The Legislature has created a scheme for the execution and revocation of wills. It is not for the courts to question the wisdom and policy of that scheme. *In re Santelli, supra,* 28 *N. J.* at 347.

In the case at bar decedent's will left everything to her then husband, Norman Schneider. She specifically made no provisions for her children, stating that she was confident that he would take care of their needs and that their best interests would be served by the manner in which the will disposed of her estate. There is nothing in the proofs that she ever evidenced any desire to dispose of her estate in any other manner, nor are any of the circumstances existing in *Sheldon* present.

The New Jersey Legislature has recently passed *L.* 1977, *c.* 412, which will become effective in July 1979. It is urged by the caveator that the statute revokes a will made by a testator who is subsequently divorced and evidences a legislative intent to incorporate into statutory law the implied revocation which the courts have recognized in these situations. He urges that since the new act is a codification of existing case law, the court should revoke the will in question. A fair reading of the new legislation, however, does not assist the caveator. The pertinent portion of the statute states:

If after having executed a will the testator is divorced * * * the divorce * * * revokes any disposition or appointment of property made by the will to the former spouse, * * * unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce * * * passes as if the former spouse failed to survive the decedent * * *. [*L.* 1977, *c.* 412, § 13]

Clearly, this statute does not operate to revoke a will solely by reason of a subsequent divorce and property settlement. The statute merely revokes a testamentary disposition to the former spouse and passes the property as if the divorced spouse had predeceased the testator. The only situation wherein the statute would bring about a complete revocation of the will would be where testator had left his entire estate to a spouse without remainder to others. Thus, even under the new act the will would not be revoked, but the property would pass as if Norman Schneider had predeceased the testatrix and her estate would go to the remainderman, Kevin Schneider.

Section 13 of the new statute further provides that "No change of circumstances other than as described in this section revokes a will." The Legislature has thus reaffirmed the rule that the scheme for the revocation of wills is a legislative creature and should be strictly followed.

The will being properly executed, it will be admitted to probate.