(No. 25228.— )

THE SHELBY LOAN AND TRUST COMPANY *et al.* Appellees,
*vs.* D. A. MILLIGAN, Trustee, *et al.* Appellants.

*Opinion filed October 13, 1939—Rehearing denied Dec. 7, 1939.*

U. G. WARD, and ROBERT I. PUGH, (JOSEPH L. Mc-LAUGHLIN, of counsel,) for appellants.

JOHN J. BAKER, PHILIP L. TURNER, and GEORGE B. RHOADS, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here to review a decree of the circuit court of Shelby county entered upon a verdict of a jury finding that an instrument probated in the county court of that county is not the last will and testament of William G. Blyman who died April 8, 1937. This instrument bears date March 13, 1937, and will be hereinafter referred to as the March will. It named appellant D. A. Milligan executor thereof. It was not filed for probate until May 17, 1937. A purported will dated February 5, 1937, hereinafter referred to as the February will, naming the Shelby

Loan & Trust Company as executor, was filed for probate in the county court of that county shortly after the death of Blyman.

On May 17, 1937, the day set for hearing on the petition to probate the February will, and after an order on Milligan to produce a will, if such he had, the March will was produced and filed. Thereafter, on hearing, on June 24, 1937, the February will was admitted to probate and probate of the March will denied. On appeal to the circuit court the probate of the March will was ordered and the probate of the February will denied. Thereafter, appellees filed the bill of complaint in this cause contesting the March will, on the ground of fraud and forgery in the execution thereof.

Appellants filed a motion to strike the complaint on the ground that the charges of fraud and forgery were insufficient. This motion was denied. On the trial of the cause appellants' counsel contended that the February will and record of the county court admitting it to probate, were improper and incompetent as evidence, on the ground that the finding of the circuit court was an adjudication of questions concerning the validity of the March will, and of the charges of fraud and forgery. They so alleged in their answer. On appellees' motion those parts of the answer setting up as a defense *res judicata* and estoppel were stricken therefrom. Appellees' answer, as finally amended, denied the right of appellee the Shelby Loan & Trust Company, as executor of the February will, to bring the suit, and denied charges of forgery and fraud. The cause was heard before a jury and much evidence was taken. The jury returned a verdict finding that the will was not the will of the decedent and a decree in accord with that verdict was entered.

To sustain the March will, appellants offered the testimony of one W. W. Hartsell, an attorney of Shelbyville, who testified that in the latter part of September, 1936, the

testator came to his office with the substance of the will written on sheets of paper in longhand, and requested him to copy it on a printed skeleton form of will. He testified that he copied upon the printed form the identical words contained in the manuscript handed him by the decedent, including the attestation clause, but did not insert the date. He further testified that he changed the printed form of the attestation clause as it appeared on the blank form of will, to comply with the manuscript which the testator gave him. The attestation clause, as printed, was in the usual form. According to Hartsell's testimony, he changed it so that, when filed for probate, it appeared as follows: "This instrument was on the day of the date thereof, ~~signed, published,~~ sealed and acknowledged to us and declared by the said testator, William G. Blyman, to be his ~~last will and testament,~~ his act and deed, in the presence of us who at his request have subscribed our names as witnesses, in his presence and in the presence of each other." He testified that having thus prepared the instrument, he returned it to Blyman who took it away with him and that the witness never saw it again until March 13, 1937, on which day the testator brought it to the offices of Milligan and Hartsell, of which firm Hartsell is a member, and requested witness to insert the date, which he did on the typewriter, and that the instrument was signed when brought to his office.

The attestation clause of this instrument bore the signatures of Thomas E. Alward and G. G. Purcell as witnesses. Alward testified that one J. E. Dazey suggested that he call at the office of Hartsell in connection with a certain appeal bond, and he, with Purcell, went to the office of Milligan and Hartsell on March 13, and that he introduced Purcell to the testator who asked him to witness his will, which he did. Purcell testified that he recalled the circumstance of signing his name to the will; that the testator and Alward were present and that the testator requested him to sign it.

One D. A. Shuck, made a beneficiary under the March will, and an appellant here, testified that he went to the home of Blyman in October or November, 1936, to borrow money; that Blyman refused to make a loan because, he told him, he was disposing of his property, and showed him a paper which the witness stated he read the commencement of and looking at the bottom saw it bore the name of William G. Blyman in a tremulous hand, and that it bore no signatures of subscribing witnesses. He admitted, on cross-examination, that the instrument he saw might have been altogether different from the will in question but that it seemed the same. It appears from the record that this witness was indebted to the First State Bank of Findlay and his note had been pledged to the testator as security for a loan which the testator made to the bank. Shuck's note was later put in judgment and under the terms of the will here contested that judgment was to be released and the obligation canceled.

Certain witnesses testified that they had seen the testator's signature frequently, though not within recent years, and were of the opinion that the signature on the March will was genuine.

Appellant Milligan was called by appellees as an adverse witness under section 60 of the Civil Practice act. He testified the March will was delivered to him at his office March 13, and that he had it in his possession until filed for probate on May 17. He testified also that the testator came to his office that morning, in March, to have him make out his income tax return and Purcell and Alward were there at the time. It appears from the evidence that the income tax return was signed by Blyman and that signature was put in evidence for comparison with the signature on the purported will. Both signatures, together with many others, have been certified to this court. An examination of the two indicates a very wide difference between them. Milligan also testified on this examination that neither he nor

his son, Kenneth A. Milligan, who lives in Minnesota, and who was to receive $3500 under the March will, were in any way related to Blyman.

Among the numerous witnesses offered by the contestants were two handwriting experts who showed extensive qualification and who testified that they had examined the admitted genuine signatures of the testator and compared them with the signature on the will and that the latter was not the genuine signature but an attempted tracing of a genuine signature made by the testator sometime during the years 1932 or 1933, during which time the evidence shows the testator had been ill. A number of other witnesses who testified to dealings with Blyman during the last year of his life and to familiarity with his signature testified that the signature on the March will was not genuine.

Numerous errors are assigned on this record and extensive briefs have been filed. Appellants urge (1) that the complaint was insufficient, and that it was error to strike that portion of the answer which raised the question of an estoppel by verdict or judgment entered in the probate of the will; (2) that the contestants' evidence was not sufficient to overcome the *prima facie* case made by the proponents, and their motion at the close of all the evidence to instruct the jury should have been allowed, and (3) errors in admission of evidence and in giving and refusing instructions.

As to the claimed error in refusing to dismiss the complaint because insufficient, it is sufficient to say that the basis of the complaint is forgery of the will. That charge can scarcely be more fully set forth than by the mere statement that the will was forged. Such, if proved, is, of course, a fraud.

Concerning appellants' claim of error on the part of the chancellor in striking that part of the answer setting up estoppel by verdict or judgment, the record discloses, as we have seen, that the court on motion of appellees struck

from the answer those allegations which alleged that the question of forgery and fraud had been settled in the circuit court on the trial of the question of probate of the will. Appellants argue that appellees should not be permitted to urge forgery and fraud in an action contesting the will. The rule has been established by this court that an order admitting a will to probate is not final until the time prescribed by statute for filing an action to contest the will has expired, and that an action to contest a will is a statutory proceeding which cannot be filed until after there is an order admitting the will to probate. The rule also is that the propriety or impropriety of the admission of the will to probate is not an issue in the contest of a will but the issue is of the validity of the will. That question is presented on its merits unaffected by the acts of the probate court. The statute distinctly states the issue in a will contest to be whether the writing produced is the will of the decedent. It makes no provision relating to the validity or invalidity of the order admitting the will to probate. (*Dowling* v. *Gilliland*, 275 Ill. 76; *Smith* v. *Goodell*, 258 id. 145.) The rule also is that any ground, which, if established by proof, would invalidate the instrument as a will, may be made the basis of a contest if the complaint be filed within the time limited by the act. (*Dowling* v. *Gilliland, supra; O'Brien* v. *Bonfield*, 213 Ill. 428; *Chicago Title and Trust Co.* v. *Brown*, 183 id. 42; *Heirs of Critz* v. *Pierce*, 106 id. 167.) The court properly struck from the answer of appellants the allegations of estoppel by verdict or judgment.

It is also argued that the verdict of the jury is contrary to the weight of the evidence because, appellants' counsel say, appellees' evidence did not overcome the *prima facie* case made by witnesses to the will. They insist that in addition to the two attesting witnesses, both Hartsell and Shuck, in effect, testified that the deceased acknowledged the instrument to be his act and deed and his will. Where

the only evidence in the record is such as under the statute makes a *prima facie* case, it is proper to instruct the jury to find the instrument to be the will of the testator, but where there is evidence introduced by both parties aside from the *prima facie* case made by the proponents, the question is then to be decided by the jury, or the court, if without a jury, on all the evidence offered by both parties, and in such state of the record an instruction to the jury as to what constitutes a *prima facie* case is not proper. *Miller* v. *Blumenshine,* 343 Ill. 531.

Both the witnesses to the will, Alward and Purcell, testified that they did not see Blyman sign his name to the will. Alward testified that Blyman asked him to witness his will; Purcell testified that to the best of his recollection Blyman requested him to sign, stating that it was a document requiring a witness. He said the instrument was a will. Assuming even that this testimony made a *prima facie* case, which is by no means free from doubt, neither of the witnesses testified that the will was signed by some other person than the testator in the presence of the testator, nor was there any testimony to the effect that the testator stated he had signed or had procured to be signed the instrument, or that he acknowledged the instrument to be his act and deed. The instrument purported to be signed by the testator and not by someone else in his presence and at his request. Though two witnesses for appellants testified they believed the signature to the will was the genuine signature of Blyman, no witness testified to having seen him sign his name, that he acknowledged that he signed or that he requested any other person to sign it. The issue concerning the signature to the will was formed by the pleadings and the question was whether the signature was the genuine signature of the testator or a forgery, and whether the instrument was procured by fraud. On that, as we have seen, a number of witnesses were called by appellees who testified that the signature was not the signature of the testator.

The two handwriting experts testified in their opinion the signature was a tracing of some genuine signature of the testator executed some years previous. Many instruments were offered in evidence bearing signature admitted to be the genuine signature of the deceased. Numerous photographs showing enlargements of the instruments bearing the genuine signatures of the deceased and the one on the instrument in question, were placed in evidence and certified by the trial court to this court. We have examined them and it is clear that the signature on the purported will is so unlike the admittedly genuine signature of the deceased, executed on the same date as of the purported will, when he signed his income tax return, and so different from the signature on the February will and the numerous checks and other papers carrying Blyman's genuine signature and covering more than a year next prior to the date of the purported will, that we have no hesitancy in saying that the jury was justified in finding that the purported signature on the March will was not genuine. An examination of exhibits containing genuine signatures of Blyman, executed during the years 1930 to 1933, shows a greater similarity to the purported signature on the March will. During those years the testator underwent a severe illness.

There are certain inherent improbabilities in the evidence offered by the proponents. According to Hartsell's testimony the attestation clause had been, in the previous September, so changed from the usual form that it indicated an intention that the testator would not sign the will himself but would have someone sign it in his presence. This most unusual feature is unexplained, and when considered with the fact that on March 13, the day on which the will is claimed to have been executed he signed his income tax return, and the further fact, shown by the evidence, of a general practice on his part to sign personally all instruments he executed, it is not strange that the jury considered that doubt had been cast on the evidence tend-

ing to establish the will as Blyman's will. When one is capable of writing, it is presumed that he will sign his name wherever his signature is required rather than procure it to be done by others. *Hamlin's Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156; *Schroeder* v. *Harvey,* 75 id. 638.

There are further features of the testimony that throw doubt on the proponents' case. Two witnesses testified that appellant Milligan, in April, shortly after the February will had been filed for probate, suggested to them that the members of the Christian Church in Shelbyville, which had been made a beneficiary under the February will, should support him as a candidate for office because he influenced the testator to make the bequest, although he said he did not draw the will but that attorney Rhoads drew it. Yet Milligan stated in his testimony that he knew the contents of the March will from the date of its execution on March 13. If so, he must have known that the March will contained no bequest to the Christian Church. His argument for political support referred to the February will and indicates either that he was deceiving the voters so approached or that he considered the February will to be Blyman's last will. The jury may well have considered these facts as evidence that the March will was not in existence when the February will was filed for probate.

Counsel for appellants complain that the court erred in admitting in evidence a copy of the record of the February will. Appellants in their answer denied the right of appellees to file their complaint. The only interest which would authorize appellee the Shelby Loan & Trust Company to file the complaint in this case was its nomination as executor by the February will. Since such right was denied by the answer, it became necessary that appellees, by competent evidence, show such interest in the estate as gave them the right to file the suit. The county court admitted the February will to probate, which order was re-

versed by the circuit court, as we have seen. Appellees point out that after the trial in the circuit court on the matter of probate of the wills, the court ordered both wills and all papers and instruments filed in connection therewith, impounded and placed in the vault of the county treasurer. Thereafter, and prior to the trial of this will contest, Robert I. Pugh, one of counsel for appellants, procured permission of the clerk of the court to take the instruments to his office, and thereafter all instruments in connection with the wills, including the February will, and excepting the March will, became lost. The court, on the trial of this cause, admitted in evidence a certified copy of the record of the county court setting out the February will and its order of probate. This was not error in the situation then before the court. It appears that counsel for appellees had previously made photostatic copies of these various instruments and some of those were admitted as secondary evidence of the originals. We see no error in this. The record shows that the purpose of the introduction of this February will and its probate was solely to establish the right of appellees to bring the suit. The jury was so instructed and there resulted no violation of the rule prohibiting the introduction in evidence of other wills.

The general rule is that where forgery and fraud are charged, courts permit evidence to take a wide range and every fact and circumstance, no matter of how little probative value, which throws any light on the issue, is admissible. *Raposa* v. *Oliveira,* 247 Mass. 188, 141 N. E. 870; *In re Woodward's Will,* 167 N. Y. 28, 60 N. E. 233, and cases cited in 68 Corpus Juris, sec. 457.

Appellants argue that error was committed in the giving and refusing of instructions. We have read the given and refused instructions and find no error therein requiring reversal. To discuss each instruction and ruling objected to, would extend this opinion beyond reasonable length. We are satisfied the jury was fairly instructed on the issues

before it. The refused instructions, so far as they presented correct propositions of law, were covered by given instructions.

Other errors are assigned, which we have considered, but which need no discussion here. While the record is not free from error, we find none that would justify reversal of this decree. The evidence as to the authenticity of this will was conflicting. The rule is that where such is true, and the evidence of either party is sufficient to sustain a verdict in his favor, the decree will not be reversed unless the verdict is contrary to the manifest weight of the evidence. *Sulzberger* v. *Sulzberger, ante,* p. 240; *Kalnis* v. *Waitek,* 347 Ill. 253; *Bundy* v. *West,* 297 id. 238.

The decree of the circuit court of Shelby county is affirmed.