(No. 25981.— )

VIRGIL GORRELL *et al.* Appellees, *vs.* FLORA BOYD *et al.* Appellants.

*Opinion filed February 18, 1941—Rehearing denied April 8, 1941.*

ROBERT P. SHONKWILER, JOHN J. BAKER, and CARL I. GLASGOW, for appellants.

C. E. TATE, and N. E. HUTSON, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Alva Gorrell, a resident of the city of Monticello, in Piatt county, died December 8, 1939. His estate consisted of both real and personal property. He left surviving as his heirs-at-law, his widow, Gay Gorrell, also known as Mayme Gorrell, three brothers, five sisters and a niece and nephew, the children of a deceased brother. Clarence and Virgil Gorrell, Ethel Strohl and Ava Secrist, brothers and sisters, filed a petition in the county court of Piatt county to probate an instrument dated April 2, 1937, purporting to be Alva Gorrell's last will and testament. Gay Gorrell's objections to the probate of the instrument were sustained and its admission to probate was denied. After a hearing *de novo,* and over the objections of Flora Boyd, a sister of the deceased, the circuit court entered an order finding the instrument to be the last will of the decedent and commanding its admission to probate. From that order Flora Boyd and Gay Gorrell have prosecuted a further appeal to this court.

April 2, 1937, Alva Gorrell went to the office of Burley A. Orrison, then county treasurer of Piatt county, and requested some yellow paper. Several sheets were torn from a pad, perforated and bound at the top, and given to him. Another type of yellow paper, without perforations and only gummed at the top, was also used in Orrison's office. Later, on the same day, Gorrell returned to Orrison's office, accompanied by Clarence L. Bollenbach, announced he had written his will and requested Orrison and Bollenbach to act as witnesses. Bollenbach examined the paper and told Gorrell that there was no place for signatures; that he had been a witness on a number of wills and that an attestation clause was customary. Orrison repaired to the county clerk's office, copied an attestation clause from another will, and, upon his return to his office, copied the clause on the reverse side of the instrument in question. Gorrell then signed, and Orrison and Bollenbach affixed their signatures as attesting witnesses. The parties concede that the instrument remained in Gorrell's custody and possession from the time it was executed until his death when it was found in his safety deposit box in the National Bank of Monticello.

We have examined the challenged instrument, a single sheet of yellow paper, entirely in Gorrell's handwriting, with the exception of the attestation clause and the signatures of the attesting witnesses. Devises of real estate and monetary bequests are made to Gay Gorrell, to the decedent's brothers, sisters, the widow of his deceased brother, and his nephew and niece. The provision directing payment of his funeral expenses is followed by a residuary clause in favor of Gorrell's heirs-at-law to the exclusion, however, of two sisters who were bequeathed nominal sums. Clarence Gorrell was appointed "administrator" and a fee fixed for his services in such capacity. It appears that a portion of the instrument has been irregularly but nevertheless carefully cut from the bottom, thereby removing

approximately one and a half inches from the paper. Immediately below the appointment of the "administrator" appears the word "over." At the bottom of the instrument there also appear marks which may have been the loops and tops of letters at one time constituting parts of written words on a line below the present extremity of the paper. In short, the instrument, as it now stands, contains no blank spaces, makes complete disposition of the testator's property and the dispositive provisions have not been altered.

The testimony of Bollenbach and Orrison to the effect that the instrument in question is not as long as when executed and published requires scrutiny. Bollenbach testified that although he read the attestation clause he did not read the will. In response to a query by the trial judge, Bollenbach added that there was writing on all the lines and that in his "judgment" the paper was an inch and a half shorter than when he attested it. Similarly, Orrison testified that he did not read or carefully examine the will, and, in particular, did not see whether the word "over" was on the instrument at the time he attested, observing that as a witness he was concerned with the writing and the witnessing of the attestation clause. In the county court Bollenbach stated: "We didn't measure that paper. It has the appearance of being cut," and "it would be my judgment" that the paper is "about an inch and a half or two inches shorter than an ordinary paper of this kind." Orrison testified that he did not know how much blank space, if any, was below the word "over," and, further, that he did not know whether there was any writing below this word. At the earlier hearing Orrison identified a piece of unperforated yellow paper one-half to three-quarters of an inch longer than the type of paper used by Gorrell as being the same kind and length furnished the decedent. Our inspection of the sheets certified to us discloses that the paper Gorrell used was perforated about a quarter of an inch from the top of the pad and was, correspondingly, shorter than the

exhibit identified by Orrison. In the circuit court, he stated that he believed another and different yellow sheet of paper to be the same as those he presented to Gorrell.

September 16, 1937, Alva Gorrell and his wife executed a warranty deed to Dwight L. Duvall and Nellie M. Duvall, conveying the property to which Gay Gorrell had been devised a life estate. C. E. Corbett, an attorney who had rendered legal service for the decedent on several occasions and who drafted the deed mentioned, testified that, in a conversation with Gorrell prior to June 5, 1939, the latter expressed his desire to talk about his will, stating that he had a will and, in substance, that he wanted Corbett to prepare a new will or "fix up the will that I now have."

The sole issue presented for determination is whether Alva Gorrell revoked his will by "tearing," within the contemplation of section 17 of the act in regard to wills (Ill. Rev. Stat. 1939, chap. 148, par. 19, p. 3191) which provides: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament, or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." A valid will, once existing, continues in force unless revoked in the mode prescribed by the Statute of Wills. (*Wolf* v. *Bollinger*, 62 Ill. 368.) Even though one of the requisite methods is followed by the testator, the intent with which the act is done governs. The testator's act is ineffectual for any purpose unless there is an intent to revoke the will, and while the intent may be inferred from the nature of the act, such intent must, in some competent way, be made to appear. (*Board of National Missions* v. *Sherry*, 372 Ill. 272; *Fleming* v. *Flem-*

*ing,* 367 id. 97.) "Tearing" within the meaning of section 17 includes cutting and it need not be a cutting of the entire will. Any tearing of the paper, however slight, is an act of tearing within the meaning of the statute if done with the intent to revoke the will, accomplishing such purpose. (*Fleming* v. *Fleming, supra; Burton* v. *Wylde,* 261 Ill. 397.) The tearing or cutting of a portion of a will with an intent to revoke a part of it cannot amount to a revocation of the will, and the original will, if its contents can be determined, is entitled to be admitted to probate. *Fleming* v. *Fleming, supra.*

Recourse to the will in the present case discloses an instrument in the handwriting of the deceased, disposing of his entire estate with devises and bequests to each of his numerous heirs-at-law, provision for the payment of his funeral expenses and the appointment of a brother as his personal representative. Before the will was cut there was, however, insufficient space on the face of the will for an attestation clause and the signatures of the witnesses in addition to Gorrell's signature. The extreme care with which the paper was cut tends to indicate that Gorrell desired the preservation of the balance of the instrument. The testimony of the subscribing witnesses shows that they did not examine the instrument closely, and neither read nor knew its contents. Their belief that the will was cut subsequent to its execution is not as consistent with the facts and circumstances attending the execution of the instrument as that the cutting occurred prior thereto. In any event, a presumption cannot operate to supply the absence of proof that it was cut after execution. The appearance of the instrument in the case at bar, as in *Board of National Missions* v. *Sherry, supra, Fleming* v. *Fleming, supra,* and *Martin* v. *Martin,* 334 Ill. 115, furnishes satisfactory explanation without extrinsic evidence. If the cutting or tearing was done before the word "over" was placed on the instrument the word itself negatives an in-

tent to revoke the will. On the other hand, if the cutting or tearing took place afterwards the language below the word was undoubtedly superfluous since the instrument, in its present condition, makes a complete disposition of all the decedent's property, both real and personal. The mere fact that the cutting or tearing of a portion of the instrument may have been done after it was executed would not necessarily amount to a revocation. The cutting must, the law ordains, have been done with intention to revoke the will. Admittedly, there has been no actual tearing of the entire will, and evidence is wanting that the testator intended the cutting of one and a half inches of paper from the bottom of the instrument to operate as a complete revocation.

The testimony of attorney Corbett to the effect that the testator had manifested a desire to rewrite or "fix up" his will is not decisive. Indeed, Gorrell, by the statement attributed to him, recognized the validity of his will more than two years after its execution. Conceding that he was then dissatisfied with the will, the statement, unaccompanied by any of the acts constituting revocation, did not invalidate or modify the will in any manner. *Miles* v. *Long*, 342 Ill. 589; *Bohleber* v. *Rebstock*, 255 id. 53.

The order of the circuit court is affirmed.

*Order affirmed.*