(No. 34028.— )

*In re* ESTATE OF GEORGE A. MURRAY.—(MARTELLA CHAMBERS, Appellant, *vs.* ROSE M. ORWICK, Appellee.)

*Opinion filed January 24, 1957.*

Louis M. March, of Chicago, for appellant.

Theodore Sharf, of Chicago, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

George A. Murray died on January 16, 1955. He was survived by his daughter, Rose M. Orwick, his only heir-at-law. On April 16, 1955, Martella Chambers, who was his housekeeper during the last years of his life, filed for probate as his will a written instrument, dated July 24, 1954, that named her sole beneficiary and executrix. Ob-

jections were filed by Mrs. Orwick. Evidence was heard, and the probate court of Cook County refused to admit the instrument to probate. Martella Chambers appealed to the circuit court of Cook County, and that court found that the proffered instrument and the signature thereon were forgeries, and that the instrument was not decedent's will. From the judgment denying its admission to probate, Martella Chambers appeals. Since the challenged document devised real estate, a freehold is involved. *Speer* v. *Josenhans*, 274 Ill. 237.

The purported will is written in longhand on two sheets of hotel stationery. Beneath the signature appear the words "residence, 1754 arcade place, Chicago, Ill." and beneath this the signatures of the attesting witnesses. Many of the letters in the various words are not connected and around the edges of many of the letters, both in the body of the will and in the signature, faint pencil traces are discernible. It is the theory of the proponent that the instrument was written by Murray with a pencil dipped in ink.

Proponent's case rests upon the testimony of the attesting witnesses, Mary M. Greene and Peter J. Pieczonka, and the rebuttal testimony of Blanche Barton and Charlotte Backes. The substance of the direct testimony of the attesting witnesses is that the instrument was already signed when they arrived at Murray's home on July 24, 1954; that he told them that the document was his will and asked them to witness it, and that in his presence and in the presence of each other they affixed their signatures as witnesses.

On cross-examination Mary Greene testified that she was a close friend of Mrs. Chambers and that she and Pieczonka had become acquainted with Murray through Mrs. Chambers. On her direct examination, she had testified that she did not recall that decedent had made any statement concerning the signature on the instrument. On cross-examination she testified that decedent said that he had signed the will, but she did so only after she had been

confronted with the transcript of her testimony in the probate court and after she had evaded the question to such an extent that it was necessary for the trial judge to admonish her against evasion. She also testified, in rebuttal, that she was familiar with the writing of George Murray; that he had a very distinctive handwriting and signature; that she had seen him write various documents on five or six occasions, and sign his name at least twice, and that in her opinion the document was in his handwriting.

Pieczonka did not testify on direct examination that Murray had told him that the instrument bore his signature. On cross-examination he first denied that decedent had said that it was his signature. After considerable evasion, when confronted with his testimony in the probate court, he testified that decedent had said, "This is my signature, I signed it."

Contestant introduced photographic enlargements of portions of the challenged instrument, a bank signature card with Murray's genuine signature and six checks admittedly signed by him over a three-year period. One of the checks was dated July 22, 1954, the same day that the purported will is claimed to have been written, and another two days earlier. In both signatures the letters are connected, and there are no pencil marks evident around the letters. On both checks the names of the payees are typewritten.

Vernon Faxon, an examiner of questioned documents, testified that in his opinion the purported will and the signature thereon were tracings, were not in the handwriting of George Murray, and except for the signatures of the witnesses, the document was "not handwriting at all." According to Faxon, the instrument was outlined first with pencil, and then an attempt was made to cover the pencil lines with ink without regard to the handwriting process. Numerous lines were written up that should be written down, others were written down that should be written up,

and there was patching and overwriting. Faxon also testified that the instrument and the purported signature of Murray were not written or signed by the same person who wrote "George Murray" on the cancelled checks; that Murray's purported signature on the instrument had been traced from a genuine signature, and that most of the will was written "by that process or close to it."

In rebuttal, proponent offered the testimony of Blanche Barton and Charlotte Backes. The former testified that on July 22, 1954, she called on Murray, whom she had known for 43 years, and saw him writing the document in question, which was at that time completed "about half way down the (first) page" to the name Martella Chambers. She remembered the precise date because it was four days before her birthday. She testified that Murray was using a pencil dipped in ink, and identified the first half of the purported will as the document which she saw him preparing. She also testified that she was completely familiar with Murray's handwriting and that in her opinion the instrument bears his signature. She stated that he had a very distinctive handwriting, that he wrote very deliberately, and that he always used a pencil dipped in ink.

On cross-examination, Mrs. Barton stated that Murray did not write checks, postal cards and "things like that" with a pencil dipped in ink, but used a pen. Later, she testified that "He used a pencil dipped in ink when he wrote cards and receipts, signed receipts, but bank checks he wrote with ink. * * * For correspondence he used a pencil dipped in ink." She identified the signatures on the checks dated July 20 and 22, 1954, as genuine. She testified that although Martella Chambers had frequently appealed to her for help, she had never mentioned to anyone, until she took the witness stand, that she had seen Murray writing the instrument in question. The trial judge, in a memorandum opinion, found her testimony "so in-

herently improbable that he disregarded it in its entirety."

The other rebuttal witness, Charlotte Backes, a friend of Martella Chambers "since 1948, when she first came to this country," testified that she had known Murray for over 50 years, that she was familiar with his handwriting, that the purported will looked very much like his writing and that the signature was his handwriting. She stated that it was his custom to write very slowly, and that he wrote as if "he was going to draw a picture when he started to write." When asked what instruments he used when writing, she replied that sometimes he used a pencil and sometimes a pen. "He had a pocketful of them all the time. The pens weren't very good." She gave no testimony that he ever used a pencil dipped in ink.

In the trial court it was the proponent's position that the instrument was written and signed by the testator. That testimony was not believed. The proponent's position in this court seems to be that all other evidence should now be disregarded, and the instrument admitted to probate solely on the testimony of the attesting witnesses, on direct examination, that the testator acknowledged before them that the instrument was his will. Upon that theory it is said to be immaterial whether or not the will was signed by Murray so long as he acknowledged it before the attesting witnesses. *Elston* v. *Montgomery*, 242 Ill. 348, *Flynn* v. *Flynn*, 283 Ill. 206, *In re Estate of Kehl*, 397 Ill. 251, and other cases are relied upon as holding that a will may be admitted to probate if it is acknowledged in the presence of two witnesses as the act and deed of the testator, whether or not he signed it.

Those cases are not applicable here. Another person can sign a will for a testator "in his presence and by his direction." (Ill. Rev. Stat. 1955, chap. 3, par. 194.) And section 69 of the Probate Act provides that the execution of a will is sufficiently proved when two attesting witnesses

testify before the probate court to the other statutory requirements and "that the testator acknowledged it to the witnesses as his act." (Ill. Rev. Stat. 1955, chap. 3, par. 221.) But that section, as amended in 1949, also provides that the will is to be admitted to probate "unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will." (2 James, Illinois Probate Law and Practice, sec. 69, p. 449.) The strong proof offered in the court below to show that this document was a forgery can not be written off in this court.

"When one is capable of writing, it is presumed that he will sign his name wherever his signature is required rather than procure it to be done by others. *Hamlin's Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156; *Schroeder* v. *Harvey,* 75 id. 638." (*Shelby Loan and Trust Co.* v. *Milligan,* 372 Ill. 397, 406.) Here there was no effort to show that the will was signed by some one other than Murray. It is not suggested that Murray was not physically able to sign his own name. Indeed, a check received in evidence was admittedly signed by him on the same day this document is said to have been written.

Of course it is possible that George Murray wrote and signed the document in question in the whimsical fashion that the proponent suggests. Two judges, however, who have seen the witnesses and heard them testify have concluded that he did not do so. We see no reason for disturbing that conclusion.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*