*In re* ESTATE OF S. D. WISE, Deceased.

(No. 71-11; )

Fifth District—December 20, 1972.

Harris and Lambert, of Marion, and George B. Lee, of Harrisburg, for appellant.

Pearce and Fechtig, of Carmi, and Hancock & Ferguson, of Harrisburg, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This appeal is brought from the Circuit Court of Saline County. Mrs. Minerva Wise, the widow of the decedent, S. D. Wise, filed a petition to have herself appointed administrator of her deceased husband's estate asserting that her husband had died intestate. Arthur Harrawood filed a petition to admit what was alleged to be the last will of S. D. Wise to Probate. Both Mrs. Wise's and Mr. Harrawood's petitions were heard at the same time by the court without a jury. The trial court denied Mr. Harrawood's petition to admit the purported will to probate and granted

Mrs. Wise's petition to appoint her the administratrix of the estate. The court also found that Mr. Wise died intestate. From the court's order this appeal is brought.

The decedent was a retired attorney, whose age at the date of his death, in December 1968, was in excess of 80 years; he left no heirs other than Mrs. Wise, his second wife. Mrs. Wise, who was 75 years of age at the time of the trial, had married Mr. Wise on April 8, 1959. She had originally met Mr. Wise when she was a young girl on vacation visiting her cousins. The Wise's lived together from April of 1959 until October, 1965, at which time Mrs. Wise left because she found Mr. Wise "too difficult to put up with". She returned in January 1967 at the request of a Dr. Bledig, who informed Mrs. Wise that Mr. Wise was ill. Dr. Bledig also told her that something would have to be done, as Mr. Wise could no longer remain in the hospital and that it might be necessary to put him in a mental institution. Mr. Wise was placed in Galatia Nursing Home in Galatia, Illinois. He remained there until about the middle of February 1967. On February 28, 1967, he entered the hospital for a cataract operation. That hospital stay lasted two or three weeks after which he was taken for the first time to the Country Club Manor Nursing Home in Harrisburg. He remained there until May 1967 when he returned home. During his stay at home, which lasted until July 1967, Mr. Wise was a very ill man, both mentally and physically, according to Mrs. Wise's testimony. Mr. Wise returned to the hospital in July 1967 for another cataract operation and from the hospital he went directly to the Country Club Manor Nursing Home for his final stay.

Mr. Wise suffered from a heart condition, hardening of the arteries, high blood pressure and he took all kinds of "dope". All this, as well as the cataract problems already indicated.

In January 1967, Mrs. Wise filed a petition to have herself appointed Mr. Wise's conservator. There is no evidence as to whether she was actually appointed or not. At about this same period of time, Mr. Wise retained an attorney and filed suit for divorce against Mrs. Wise. This was not brought to a final decree and was dropped by agreement in February 1967, and was not discussed again.

Mr. Arthur Harrawood had known the deceased since 1934. In 1934 Mr. Harrawood had become employed by the deceased to live on and manage Mr. Wise's 200 plus acre farm. The deceased and his first wife also resided on the farm in a home about one hundred and fifty yards from the Harrawood's dwelling. Mr. Harrawood continued to live on the decedent's farm until Mr. Wise's death and thereafter. Mr. Harrawood and his wife raised six children on the decedent's farm. Five were still alive at the time of the trial and testified at the trial.

Mr. Harrawood managed and operated the farm for Mr. Wise as well as doing Mr. Wise's bookkeeping and record keeping. Various members of the Harrawood family testified as to the close relationship that existed between Mr. Wise and Mr. Harrawood. After Mr. Wise's first wife died in 1942, Mr. Wise visited back and forth with the Harrawoods. Often the Harrawoods took food to Mr. Wise and often Mr. Wise ate with the Harrawoods during the period from 1942 to 1959 when Mr. Wise lived alone.

In 1965, Mr. Wise had a will prepared by Arthur Summers, attorney in Eldorado, Illinois. Mr. Summers was also a longtime friend of Mr. Wise. Mr. Summers gave the unexpected will to Mr. Wise, who removed it from Mr. Summers' office.

Mr. Harrawood placed into evidence as Exhibit No. 1 what is represented as a copy of the will that Attorney Summers prepared for Mr. Wise. The exhibit bears a typewritten date of March 27, 1965, and also contains on the testator's signature line the writing "not to be signed".

In support of his petition to admit the purported copy to probate, Mr. Harrawood called Mr. Bruce Polk and Mr. H. Edwin Towle, as attesting witnesses to the document. They testified that, while they did not know the date, they, together with John W. Towle, signed as witnesses an instrument for Mr. Wise which Mr. Wise informed them was his will. They also testified that at the time, they believed Mr. Wise to be of sound mind and memory. No evidence was presented that either witness knew the contents of the purported will. Also, although the purported copy contained the names of the witnesses, it is not clear that the names on the will were, in fact, the signatures of the witnesses. Mr. Towle testified on cross-examination that he did not think the signature was his and Mr. Polk testified that he did not recall signing a document that did not contain Mr. Wise's signature.

The provisions of the purported will included three specific bequests of monies and then gave one-half of the estate to Mrs. Wise and the remainder to Mr. Harrawood, who was also named as executor.

Joint-petitioner's Exhibit No. 1 was a Safe Deposit Box Record for the decedent's Safe Deposit Box, #66, in the Harrisburg National Bank. It shows that Mr. Wise entered the box on March 24, 1965, twice on March 27, 1965, the date of the purported will, and made six subsequent entries to the box through May 26, 1967, two of which were subsequent to Mrs. Wise's return in January 1967. It also shows that Mrs. Wise signed the Safe Deposit Box record on three occasions after having been given Mr. Wise's general Power of Attorney, although Mrs. Wise entered the box only twice the last entry having been made but three days prior to Mr. Wise's death.

In support of his position, petitioner Harrawood had his five living children testify concerning the long, friendly relationship between Mr. Wise and their father. Two of the children testified of conversations with Mr. Wise in which he referred to a will by which he "had taken care of" Mr. Harrawood. The conversations were stated to have occurred as late as September 1968 in the nursing home in Harrisburg and as early as 1952.

Reverend Harry Garrett, a Baptist Minister, also testified that Mr. Wise told him that Mr. Wise "had taken care of" Mr. Harrawood. This conversation took place within two or three years of Mr. Wise's death but Rev. Garrett could not testify as to just when it had occurred.

At the conclusion of the evidence the trial court held that the evidence was not sufficient to establish the will and overcome the presumption that Mr. Wise destroyed the same *animo revocandi*. There are two issues presented for review by the appellant, Mr. Harrawood.

First, was there sufficient proof that the March 1965 will was properly executed? Second, did the petitioner rebut the presumption that the lost will was destroyed *animo revocandi?* The issues will be considered inversely to the order presented since a finding in the negative of the second would be dispositive of the first.

■■ It is a well-settled rule that when a will is retained by the testator after execution and cannot be found, after his death, it will be presumed to have been destroyed by him *animo revocandi*. (*In re Moos' Estate,* 414 Ill. 54, 110 N.E.2d 194.) The burden is thus on the one seeking to probate the will to show that it was unrevoked at the testator's death. Also, as stated in *In re Moo's Estate, supra,*

> "Thus, in the present case, as in all such cases, the issue of whether the carbon copy should be admitted to probate * * *, gives rise to the query of whether the proof offered by appellants is sufficient to overcome the presumption of revocation by the testator."

Or, as stated in *In re Estate of Carr,* 126 Ill.2d 461, 262 N.E.2d 54. "The issue in the present case, therefore, is simply whether the proof clearly overcame the presumption of revocation in the instant case."

■■ The issue of this case can then be further stated as, Was the holding by the trial court that the appellant did not rebut the presumption that the decedent destroyed the will *animo revocandi* against the manifest weight of the evidence? As stated in *In re Estate of Cross,* 84 Ill.App.2d 59, 228 N.E.2d 510:

> "Since the amendment to Section 329 of the Probate Act (Ill. Rev. Stat. 1963, Ch. 3, Sec. 329) an appeal from an order denying probate to a will is governed by the same principal as other civil

appeals in reviewing alleged errors of the trial court * * *. A judgment will be reversed on appeal if it is manifestly against the weight of the evidence."

And as stated in *In re Morgan's Estate,* 389 Ill. 484, 59 N.E.2d 800 at p. 803, "The chancellor heard and saw the witnesses and is in the better position than we, reading from the record, to judge the truthfulness of their testimony." And finally, in referring to the issue of whether or not the presumption that the will had been destroyed by the testator was overcome, it has been stated in the recent case of *Jackson v. Jackson,* 268 N.E.2d 62 at p. 65:

"All these matters moreover were considered by the trial court and a jury. On the basis of these findings, this Court neither wishes to substitute its judgment for that of the jury or trial court, nor does it find the decision contrary to the manifest weight of the evidence." See also *Knaphurst v. Lindauer* 61 Ill.2d 269, 210 N.E.2d 23.

■■ In deference to the trial court and its superior position to hear the testimony, observe the witnesses and judge their truthfulness and demeanor, we do not find that the judgment is against the manifest weight of the evidence.

Thus, we need not and shall not consider whether or not there was sufficient evidence to prove that the will was properly executed.

The judgment of the trial court is affirmed.

G. MORAN, P. J., and JONES, J., concur.