*In re* ESTATE OF CHARLES L. MINSKY, Deceased.—(MARGARET MINSKY *et al.*, Petitioners-Appellees, *v.* STANLEY W. MINSKY, Individually and as Ex'r of the Estate of Charles L. Minsky, *et al.*, Respondents-Appellants.)

First District (2nd Division)   No. 62513

Opinion filed February 15, 1977.

Robert A. Bush, of Mt. Prospect, for appellants.

Richard Altieri and Joseph Scoville, both of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Stanley W. Minsky, both individually and as executor of the estate of Charles L. Minsky, Elizabeth Przybylski, and Lillian V. Peterson (hereinafter referred to as "appellants") appeal from an order of the circuit court declaring the will of Charles L. Minsky (hereinafter referred to as "testator") revoked and vacating a previous order whereby said will was admitted to probate. On appeal, appellants contend that the trial

court's finding of revocation is contrary to the manifest weight of the evidence and that the trial court improperly denied appellant's motion for a one day continuance to allow them to produce a material witness.

Testator died on December 31, 1974. On March 7, 1975, a hearing was held in the circuit court on a petition filed by the executor of testator's estate to admit to probate a document dated March 29, 1972, and purporting to be the last will and testament of testator. Oliver Harris and Janet Thompson, attesting witnesses to the execution of this document, testified at the hearing. At that time, Harris was a legal associate and Thompson the secretary of Jack R. Davis, the attorney who drafted the document and who represented appellants throughout the proceedings in the circuit court. Both witnesses observed testator sign the document, and they then signed the original document and "one or two" onion skin copies. It was their opinion that testator was of sound mind and memory at the time he signed the document. On cross-examination, both witnesses responded to questions posed by appellee's counsel. Although their answers were responsive to the queries concerning the execution of the will, neither witness commented with regard to counsel's repeated reference to the "three documents." At the conclusion of this hearing, the court ordered the will admitted to probate.

On April 2, 1975, testator's wife and two daughters (hereinafter referred to as "appellees") filed a petition to vacate and reconsider the order entered on March 7, 1975, admitting the will to probate, and for other relief. It was alleged, *inter alia*, in the petition that testator duly executed his will in triplicate, retaining one copy in his possession and giving the other two copies to his attorney, Jack Davis; that at the proceeding to admit the will to probate, only two copies of the will were accounted for; and that appellees could offer proof establishing that testator revoked his will by tearing and destroying the copy which he had retained.

Appellants filed a motion to dismiss the petition. They alleged therein that testator executed an original and one onion skin copy of his will; that testator retained possession of the original document and that Davis retained possession of the one onion skin copy; that the original document was filed with the clerk of the circuit court on January 29, 1975; and that the one onion skin copy remained in the files of Davis. Attached to, and in support of, the motion to dismiss was an affidavit of Davis. The declarations contained in the affidavit supported the allegations asserted in the motion.

Appellees filed a reply to the motion to dismiss and alleged various procedural defects in the motion. In addition, appellees quoted portions of the transcript of the proceeding to admit the will to probate when appellees' counsel repeatedly referred to the "three documents" during his cross-examination of the two attesting witnesses. It was alleged that

the testimony adduced at the previous proceeding established that three documents were executed. Since one copy was not accounted for at that hearing, a presumption attached that testator destroyed the missing copy, thus revoking his will. Also quoted in the reply was a segment of the cross-examination of Janet Thompson when she stated that she placed the original document, as opposed to the onion skin copy as stated in Davis' affidavit, in the files at Davis' law office.

After other pleadings were filed with respect to the petition, a hearing on the petition was conducted on May 21, 1975. The court first entertained arguments by counsel regarding appellants' motion to dismiss the petition. Davis took the witness stand to enable the court and opposing counsel to examine him with respect to the affidavit he filed in conjunction with the motion to dismiss. Upon questioning by the court, Davis recounted the circumstances under which he was retained by testator to draft the will and the manner in which the will was executed. He maintained that only the original and one onion skin copy were prepared and executed and that the original was given to testator.[1] Counsel for appellees confronted Davis with most of the testimony elicited at the prove-up hearing of March 7, 1975, which counsel had quoted in his reply. Davis stated that he believed his secretary had testified truthfully at that hearing. At the conclusion of the arguments, the court commented that it remained unclear whether one or two copies of the will had been executed in addition to the original document and denied the motion to dismiss the petition.

Although contending that a presumption of revocation should arise in favor of appellees thus shifting the burden to appellants, counsel for appellees proceeded to call two witnesses to testify in support of the petition to vacate and reconsider. The witnesses were the sister-in-law and the mother of testator's widow. Both witnesses testified that they engaged in a conversation with testator in his home during March of 1974, some nine months prior to testator's death. At that time, testator was holding some papers which he identified as his will. He also mentioned the date on which the will was executed and the name of the attorney who had drafted the will. Testator related to the witnesses that he had excluded his wife from the will because of marital difficulties they were experiencing at the time the will was prepared. However, since they had reconciled their differences, he regretted the exclusion. He requested that the witnesses not divulge their conversation to his wife, whereupon he

---

[1] At the prove-up hearing. Davis' secretary testified that the original document was placed in the office file and that the onion skin copy was given to testator. It is interesting to note that during the cross-examination of Davis it was revealed that a few weeks after testator's death, Stanley Minsky brought the original copy of the will to Davis and the same was filed with the court. Neither counsel nor the court pursued any inquiry of Stanley Minsky as to how, when and where he came into possession of the will.

tore the papers and departed. Although neither witness examined the papers, both observed signatures on them.

When this testimony was completed, appellees rested their case and appellant's motion for a finding in their favor was denied. The following colloquy then occurred:

"MR. DÁVIS: I will have to proceed with my case.

THE COURT: In view of that—

MR. DAVIS: Recess until tomorrow.

MR. ALTIERI [co-counsel for appellees]: I object, your Honor. Your Honor said this was the final date. It has got to go on.

MR. DAVIS: It's the final date.

MR. SCOVILLE [co-counsel for appellees]: He asked for a continuance.

MR. ALTIERI: Their witnesses are here.

MR. DAVIS: They are not here. I told you I have a subpoena out and the witness will be here tomorrow morning at 10:00 o'clock.

MR. ALTIERI: Somebody was exluded here.

THE COURT: I don't want to preclude anybody from anything, Counsel, except this—what's the nature of the evidence? Can you tell me or give us some idea what it would be? Is it decisive, important I mean?

MR. DAVIS: It is very important, Judge.

THE COURT: What is the nature of it?

MR. DAVIS: You want me to disclose—

THE COURT: No. I mean you can give me a short statement, don't have to tell me what the case is. You certainly aren't bound to do that. Off the record. Let's not put this on there.

[Discussion off the record.]

MR. DAVIS: I want to bring in my witnesses. I am asking the Court to hear all the evidence under the cases cited.

MR. SCOVILLE: Off the record.

[Discussion off the record.]

MR. DAVIS: You have to base the facts on the two witnesses. I have a right to bring in rebutting evidence. No question about it, and if you didn't permit me there would be error in this record. You got to hear all the facts.

MR. ALTIERI: The offer he made of friendly and unfriendliness has no bearing on the revocation and I ask Your Honor—

THE COURT: That's important.

MR. ALTIERI: Your Honor sat too long. May we have your decision?

MR. DAVIS: The Court knows there is a supplemental proceeding pending.

THE COURT: What's the nature of that?

MR. DAVIS: Another theory I will present in my case. He said he was of unsound mind when he drew the Will. They said he was of unsound mind and in 1974 they said he was of unsound mind. I have 1974, here is the citation.

THE COURT: I rule this is a revocation. They are not going to— I don't want to hear it.

MR. DAVIS: He would have to have sound mind to revoke. I want this on the record. He would have to have whole mind [*sic*] to revoke.

THE COURT: Now we are getting into supplemental. I am only hearing revocation. I can't listen to all that.

MR. DAVIS: Does he have to have real capacity to revoke, if you were to rule adversely to the Executor this would never be determined.

MR. ALTIERI: That's what the Judge determines once he makes his ruling.

MR. DAVIS: Go ahead and make your ruling, Judge. Make your ruling, Judge.

THE COURT: All right. Let the record show that after the evidence adduced with the testimony the Court finds that the Will was revoked, period."

Appellant's first contention is that the circuit court's finding of revocation is contrary to the manifest weight of the evidence.

■■■ The Probate Act provides that within nine months after a will has been admitted to probate, any interested person may file a complaint in the circuit court of the county in which the will was admitted to probate to contest the validity of the will. (Ill. Rev. Stat. 1973, ch. 3, par. 90.) An order admitting the will to probate is a prerequisite to the right to institute a will contest in order to attack the validity of the will in a direct proceeding. (*Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, 68 N.E.2d 892.) The contestant has the initial burden of going forward with the evidence to establish the invalidity of the will. (Ill. Rev. Stat. 1973, ch. 3, par. 92.) Any ground which, if established by the proof, would have the effect of invalidating an instrument as a will may be made the basis of a will contest. (*Shelby Loan & Trust Co. v. Milligan* (1939), 372 Ill. 397, 24 N.E.2d 157.) Revocation is one such ground which may be asserted in this manner. *Dowling v. Gilliland* (1916), 275 Ill. 76, 113 N.E. 987.

The act of tearing is one statutorily recognized means for revoking a will. (Ill. Rev. Stat. 1973, ch. 3, par. 46.) However, the commission of one

of the requisite acts of revocation, standing alone, is ineffectual unless accompanied by an intent to revoke. (*Gorrell v. Boyd* (1941), 376 Ill. 132, 33 N.E.2d 190.) As a general rule, revocation by the testator of one of two or more copies of the will revokes the other copies left in the custody of another person. *In re Estate of Holmberg* (1948), 400 Ill. 366, 81 N.E.2d 188.

■■ In the instant case, it is undisputed that the original and one onion skin copy of testator's will were duly executed. It is unclear, however, if a second onion skin copy was also executed. At the hearing to admit the will to probate, both attesting witnesses testified that they signed the original and one or two copies. No other evidence was adduced at that prove-up hearing indicating the number of documents which were executed as the last will and testament of testator. Within nine months subsequent to the entry of the order admitting the will to probate, appellees filed a petition in the circuit court contesting the validity of the will on the ground that the will was revoked by testator. In the proceeding at which the merits of the petition were adjudicated, appellees argued that the will had been executed in triplicate and that only two of the copies were accounted for at the hearing to admit the will to probate. Appellants maintained that only the original and one copy of the will were executed. Appellees introduced the testimony of two witnesses which tended to prove that testator expressed to the witnesses an intent to revoke his will and then tore papers which he identified as his will. The trial court, sitting as the trier of fact with the evidence as heretofore related before it, observed the demeanor of the witnesses, considered the arguments of counsel whereby the respective positions of the parties were elucidated, and ruled that the will which was previously admitted to probate was invalid since it had been revoked by testator. We consider this ruling to be supported by the evidence adduced and not contrary to the manifest weight of the evidence. Consequently, the order of the circuit court vacating the order admitting the will to probate will not be disturbed on this ground. *In re Estate of Wise* (1972), 9 Ill. App. 3d 20, 291 N.E.2d 292.

With regard to appellants' contention that the trial court erred by denying their motion for a continuance, it should be noted that appellants failed to comply with Supreme Court Rule 231 (Ill. Rev. Stat. 1973, ch. 110A, par. 231) when seeking the continuance. Rule 231 provides that a motion for a continuance on the account of the absence of material evidence *shall* be supported by affidavit showing due diligence on the part of the movant, the nature of the evidence which could be produced if the motion is granted, and the likelihood of procuring the evidence if further time is allowed. The rule also provides that "No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." (Ill. Rev.

Stat. 1973, ch. 110A, par. 231(f).) Due to appellants' failure to comply even minimally with the provisions of Rule 231, the motion could properly be denied.

However, appellants argue that they relied upon certain comments by the trial court which were made during the morning session of the hearing on the petition. This colloquy occurred at that time:

"MR. ALTIERI: You want to go to lunch?

THE COURT: I think so.

MR. ALTIERI: Okay.

THE COURT: Come back at quarter to 2:00. I have a big call. I will try and take you people.

MR. DAVIS: I will have witnesses, proceed with my case and I have got one witness under subpoena and he can't be here until tomorrow so maybe you better—

MR. ALTIERI: Does the subpoena call for today?

MR. DAVIS: Today.

THE COURT: I don't know what will happen but if we need to let me put it this way we'll continue it to tomorrow sometime and conclude it. If we can't finish we can't finish we'll do the best we can. How many witnesses do you have, two or three or what?

MR. DAVIS: At least two.

THE COURT: All right, fine."

When the proceeding resumed during the afternoon session, appellees adduced additional evidence and then rested their case. At that point, appellants requested a continuance to the following day when their subpoenaed witness could be present. The first colloquy set out in this opinion then occurred, culminating with the denial of appellants' motion for a continuance and the finding of revocation by the court.

■■ Although the court requested a brief statement as to the nature of the testimony which could be adduced if the motion was granted, the discussion which ensued was intermittently held off the record. Thus, we are without a specific statement as to what material facts, if any, this witness could testify if called. The purpose of an offer of proof is to indicate to the trial court, opposing counsel, and a court of review the nature and substance of the evidence expected to be offered. (*Moren v. Samuel M. Langston Co.* (1968), 96 Ill. App. 2d 133, 237 N.E.2d 759.) If there is no other satisfactory indication of the substance of the evidence a party desires to introduce, an offer of proof should be made. (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588.) The degree of specificity which is required in an offer of proof was elucidated in *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 71, 235 N.E.2d 17, 20-21:

"To some extent, the requisite formality of an offer of proof will

depend upon the circumstances of the particular case. Where it is obvious that the witness is competent to testify to a fact, and it is obvious what his testimony will be if he is permitted to give it, a brief statement by counsel may suffice. [Citation.] In a case such as this, however, where it is by no means clear what the witness will say, or what his basis will be for saying it, the offer of proof must be considerably more detailed and specific * * *. Only in this way can a reviewing court know what was excluded and determine whether the exclusion was proper."

In the instant case, no offer of proof was made on the record in accordance with the standard set forth in *Hession*. Although there was some on-the-record discussion, the record is at best confusing with regard to what testimonial evidence could be introduced and the basis for this testimony. Indeed, the colloquy pertained more to legal theories and an unexplained supplemental proceeding than it did to testimonial evidence and the identity of witnesses. After one off-the-record conference, appellees' counsel commented that "The offer he made of friendly and unfriendliness has no bearing on the revocation * * *." At another point, appellants' counsel referred to "Another theory I will present in my case * * *," apparently regarding the mental capacity of testator at the time of the purported revocation. An interpretation of this colloquy is a matter of conjecture, and the lack of clarity in this portion of the record renders it impossible for this court to effectively assess the correctness of the trial court's ruling on the motion for a continuance. However, unlike the factual situation in *Hession*, the responsibility for the condition of this record must be borne not only by appellants, but also by appellees and the trial court. During the arguments on appellants' oral motion for a continuance, discussion was held off the record at two critical junctures. First, immediately after the court solicited a statement of the absent witness' testimony, the court declared "Off the record. Let's not put this on there." Then, when the discussion resumed on the record with appellants stating that the court must hear all applicable testimony, appellees succeeded in obtaining further discussion off the record. Furthermore, throughout this colloquy, counsel for appellees persistently sought a ruling by the court in a manner which only served to further obfuscate the hearing.

■■ Another factor is particularly noteworthy in this case. As the record now stands, appellants have introduced no evidence in support of their position. After the trial court stated during the morning session that the case could be continued to the following day if necessary, it would be understandable if counsel adjusted their schedules accordingly. At any rate, no witnesses appeared on behalf of appellants during the afternoon

session, whatever the reason. While we do not condone appellants' total failure to comply with Supreme Court Rule 231 and to make a lucid offer of proof, we consider that justice requires a different result than we would normally reach but for the circumstances of this case. Since this matter was litigated with a tacit understanding that the case would be continued to the following day in order for appellants to present their case, and due to the inexcusable state of the record for which appellants should not be required to shoulder full responsibility, the judgment of the circuit court is vacated and the cause remanded with directions that appellants now be permitted to present their case. (See *Lindeen v. Illinois State Police Merit Board* (1962), 25 Ill. 2d 349, 185 N.E.2d 206.) We thus direct that the trial court who heard the cause at bar now proceed to hear appellants' witnesses and whatever rebuttal or other evidence the trial court deems appropriate and after argument, enter such disposition that it finds is supported by the record. While we are cognizant of other decisions which would suggest a different result from that reached herein, we confine the rationale supporting our decision to the factual situation now before us.

We feel compelled to make one final observation. The procedure pursued in the circuit court by all parties was less than exemplary. For example, there was some disagreement during the oral arguments before this court as to whether the transcript of the hearing to admit the will to probate was properly part of the record. If the Probate Act (Ill. Rev. Stat. 1973, ch. 3) would have been closely adhered to, some of the procedural confusion which arose in this case could have been avoided.

Judgment vacated and cause remanded with directions.

DOWNING, P. J., and JIGANTI, J., concur.